# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ROBERT PHONEPRASITH,<br><br>                Plaintiff,<br><br>v.<br><br>JON E. LITSCHER, CATHY JESS, CINDY O'DONNELL, BRAD HOMPE, MARK HEISE, J. MERBACH, DAISY CHASE, WILLIAM POLLARD, JOANNE BOVEE, CHERYL EPLETT, DYLON RADTKE, BRIAN GREFF, JOE FALKE, SARA KOERNER, TA DEVRIES, MICHAEL BERNSTEIN, ELLEN RAY, and WARDEN GARY BOUGHTON,<br><br>                Defendants. | Case No. 19-CV-456-JPS<br><br>**ORDER** |

    Plaintiff Robert Phoneprasith, who is incarcerated at the Wisconsin Secure Program Facility, proceeds in this matter *pro se*. He alleges that the defendants named in this matter violated his constitutional rights by retaliating against him for using the inmate complaint process. (Docket #1). This matter comes before the Court on Plaintiff's motion to proceed *in forma pauperis*. (Docket #6). Plaintiff was assessed, and paid, a $35.51 filing fee. *See* (Docket #9).

    The court shall screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or

malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109–10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint's allegations

"must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Most of the events in this complaint unfolded at Dodge Correctional Institution ("DCI"). Plaintiff alleges that on November 5, 2017, he employed the grievance process to complain about how DCI librarians Tammy "Ta" DeVries ("DeVries") and Michael Bernstein ("Bernstein") mishandled his legal materials, apparently with respect to a photocopying policy. *See* (Docket #1 at 5). The inmate complaint examiner told him to address the issue with Program Supervisor Brian Greff ("Greff") before filing a grievance. Plaintiff complained to Greff, who said, "[i]t is unfortunate that you were inconvenienced. The staff try to accommodate the needs of over 1600 inmates and their use of the library." *Id.* Plaintiff found this response unsatisfactory in light of the fact that he had, in fact, scheduled time with the librarians in order to be personally accommodated, and seemed to be the only inmate attempting to use the library at the time that the mishandling occurred.

After Plaintiff submitted his complaint that his legal materials were mishandled, DeVries changed his permitted law library time so that it would interfere with his work schedule. Specifically, his law library passes changed from 1:30 p.m. to 7:30 a.m., 8:30 a.m., and 9:30 a.m. Plaintiff, who typically worked in the kitchen during the morning, found this change difficult. He had been at DCI since 2012 and had never had a morning library pass before. He received no advanced notice about at least one of these changes. The changes led him to suspect that something was amiss.

On December 7, 2017, when Plaintiff asked Devries and Bernstein why they had switched his law library times, they explained that he brought them too many documents to copy and file at the last minute. *Id.* at 6. Plaintiff was unconvinced; he contends that it does not take very long to copy and file documents. After this exchange, he was escorted out of the law library by a correctional officer and was unable to use his law library pass that day.

This was only the beginning of the retaliation. On December 14, 2017, DeVries denied Plaintiff a copy of the Wisconsin jury instructions, which he had previously been using. Plaintiff complained about this action to Greff on December 17, 2017, to which Greff responded that the library offered everything that it was required to offer pursuant to Division of Adult Institution ("DAI") Policy No. 309.15.01. The policy does not specifically include jury instructions. Plaintiff is pursuing three defective jury instruction claims; therefore, withholding the instructions hinders his ability to litigate his claims. Plaintiff alleges that in the months before his library law passes changed and the jury instructions were withheld from him, it was "no secret among the DCI staff and inmates that [he] had been tirelessly complaining about. . .DeVries and Bernstein." *Id.* at 8.

On January 18, 2018, Plaintiff contends that the Program Review Committee ("PRC"), which included Greff, Joe Falke ("Falke"), and Sara Koerner ("Koerner"), decided to recommend that Plaintiff be transferred from DCI to WSPF. Plaintiff contends that this was an adverse action in light of the fact that he had established a fairly good prison report at DCI. Plaintiff believes that WSPF is for "bad" inmates and did not believe the PRC's explanation that he was being transferred to WSPF for programing and inmate population control reasons. He cites Greff's involvement in both the complaint review process and the PRC as a fact in support of the inference that the transfer was retaliatory.

Plaintiff wrote to various Wisconsin DOC officials, including Jon E. Litscher, Cathy Jess, Mark Heise, Daisy Chase, William Pollard, Joanne Bovee, Cheryl Eplett, Dylon Radtke, Greff, Falke, and Koerner, explaining why he did not believe he should be transferred to WSPF. He also filed an inmate complaint about the transfer, which was rejected by Bovee as both premature and failing to exhaust an administrative remedy in place for appeals of decisions by the PRC. *Id.* at 10.

On January 31, 2019, Plaintiff's transfer from DCI to WSPF was approved. Chase prepared an inmate classification report, which included a statement from the PRC that "the committee is in agreement that [Plaintiff] may benefit from the resources available at WSPF and WSPF is looking to fill general population beds." *Id.* at 11. Plaintiff found this explanation unpersuasive, claiming that there are no noteworthy differences in programming between DCI and WSPF. He notes that he has too much time left in confinement to participate in the Thinking for a Change Program available at WSPF (which is also available at DCI). He also states that DCI was "so over-crowded that [it] was sending inmates

classified [as] maximum security to county jails for temporary holding" and that DCI had "more than enough inmates classified [as] maximum security to fill WSPF's open bed spaces" without having to transfer him. *Id.* at 12. He believes that the PRC's recommendations were pretext for their retaliation against him, and that he was singled out for using the inmate complaint process. On February 2, 2018, Plaintiff filed an administrative review of the re-classification decision, which was rejected as premature and failing to exhaust the administrative remedy in place for appeals of decisions by the PRC. An appeal was rejected on February 12, 2018 by William Pollard.

Once transferred to WSPF, Plaintiff noticed that over half of the inmates in his unit were sent there for disciplinary reasons. He submitted a complaint to the Wisconsin Attorney General. The Bureau of Offender Classification and Movement Designee, "J. Merbach," denied the complaint, reiterating that he was not transferred to WSPF for disciplinary reasons, but rather because of bed space and the availability of resources. *Id.* Plaintiff continued to find this uncompelling. *Id.* at 13–14. On July 22, 2018, he submitted an inmate complaint, which was, again, rejected and dismissed by Ellen Ray and Gary Boughton because Plaintiff failed to use the administrative review process prescribed for challenges to PRC decisions. *Id.* at 14–15. Plaintiff filed an appeal, contending that by dismissing his complaint for "technical reasons," these officials were complicit in the retaliation. *Id.* at 15. The appeal was dismissed by the Corrections Complaint Examiner Brad Hompe ("Hompe") on August 8, 2018, and the dismissal was accepted by Secretary Cindy O'Donnell on September 4, 2018. Plaintiff now brings this litigation, in which he sues

every official involved in the complaint review process for violating his constitutional rights.

To state a First Amendment retaliation claim, Plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). "A prisoner has a First Amendment right to make grievances about conditions of confinement." *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). Additionally, "an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper." *Howland v. Kilquist*, 833 F.3d 639, 644 (7th Cir. 1987) (quoting *Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir. 1978)).

In *Gomez v. Randle*, for example, the Seventh Circuit found that an injured plaintiff who attempted to file a grievance sufficiently alleged that a transfer was retaliatory when he claimed that an internal affairs investigator tried to intimidate him into dropping his grievance. 680 F.3d 859, 866 (7th Cir. 2012). In addition to searching his cell, taking the shirt he was wearing the day of the injury, and telling the plaintiff that he had no proof that the injury happened as he said it did, the investigator also threatened to transfer the plaintiff to a facility where he had known enemies if he did not drop the complaint. *Id.* The day before the transfer, the plaintiff told another investigator that he would not pursue the grievance if he could be allowed to stay at his current facility, but was told it was "too late." *Id.* The Seventh Circuit determined that because "[n]o other explanation for [the] transfer is available at this early stage in the proceeding. . . we

conclude. . .that his grievance was a motivating factor in the defendants' decision to transfer him." *Id.* at 867–68. A plaintiff sufficiently alleges that a protected action was the "motivating factor" behind the retaliation if it "may have tipped the balance [in favor of the retaliatory action]. . .but was too weak a one to have triggered the [retaliatory action] alone." *Hasan v. United States Dep't of Labor*, 400 F.3d 1001, 1006 (7th Cir. 2005).

Generously construed, Plaintiff's allegations state a claim for retaliation in violation of the First Amendment against DeVries, Bernstein and Greff. Plaintiff alleges that he engaged in protected activity by filing a grievance process regarding the mishandling of his legal material. *Watkins*, 599 F.3d at 798. He alleges that the retaliation that he experienced in response to this complaint was two-fold: first, he was effectively denied access to the law library by DeVries and Bernstein; and second, he was transferred to a maximum-security prison far away from his family at Greff's behest. He cites Greff's involvement in both the library materials complaint process and the transfer process to raise the inference that he recommended Plaintiff's transfer in retaliation. The Court is satisfied that this type of treatment would deter future complaints of mishandled legal material. There does, however, appear to be an issue with whether Plaintiff administratively exhausted the complaint process regarding his transfer. The Court leaves that to the defendants to raise in their response.

Additionally, only those officials who are directly responsible for a constitutional violation may be sued under Section 1983. *Minix v. Canarecci*, 597 F.3d 824, 833–34 (7th Cir. 2010). Although an official may be liable for conduct about which he knowingly facilitated or ignored, there must be "some causal connection or affirmative link" between the complained-of action and the official who is sued. *Gentry v. Duckworth*, 65 F.3d 555, 561

(7th Cir. 1995). Additionally, "public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Under *Raemisch*, a complaint examiner who dismisses a complaint as untimely cannot be held liable for a prison official's allegedly unconstitutional conduct, nor can a public official who merely receives word of a prisoner's claim by way of a letter be held responsible for investigating that claim. *Id.* Prison officials and complaint examiners are "entitled to relegate to the prison" the administration of various matters, including facility access and transfers. *Id.* Accordingly, the complaint examiners who dismissed Plaintiff's complaints as premature, as well as the officials whom Plaintiff apprised of the situation but who did not knowingly facilitate the potentially unconstitutional action, must be dismissed from the action.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Docket #6) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants Jon E. Litscher, Cathy Jess, Cindy O'Donnell, Brad Hompe, Mark Heise, J. Merbach, Daisy Chase, William Pollard, Joanne Bovee, Cheryl Eplett, Dylon Radtke, Joe Falke, Sara Koerner, Ellen Ray, and Warden Gary Boughton be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of Plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the state defendants;

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, the remaining defendants shall file a responsive pleading to this complaint within sixty days of receiving electronic notice of this order;

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the $314.49 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with Plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where the inmate is confined; and

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, Plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. If Plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 21st day of August, 2019.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge